### SLAUGHTER v. CRISMAN & NESBIT.

(Court of Civil Appeals of Texas. San Antonio. Dec. 4, 1912. Rehearing Denied Jan. 1, 1913.)

**1. ARBITRATION AND AWARD (§ 35*)—AWARD —OPERATION AND EFFECT.**

That an award shows that two of the three arbitrators proceeded to investigate the claims, but thereafter selected a third arbitrator, does not invalidate the award where it does not show that the three arbitrators failed to reinvestigate the matters already gone over.

[Ed. Note.—For other cases, see Arbitration and Award, Cent. Dig. §§ 184–190, 204; Dec. Dig. § 35.*]

**2. ARBITRATION AND AWARD (§ 46*)—PROCEEDINGS—OBJECTIONS AND WAIVER.**

Where one of the parties to an arbitration appeared and offered testimony both before and after the appointment of the third arbitrator, he waived any irregularity in the fact of procedure by two arbitrators before the appointment of the third.

[Ed. Note.—For other cases, see Arbitration and Award, Cent. Dig. §§ 230–243; Dec. Dig. § 46.*]

**3. TRIAL (§ 238*)—INSTRUCTIONS—PROVINCE OF COURT AND JURY—MATTERS OF LAW.**

In an action on an award of arbitrators, an instruction submitting the question whether a mistake of law indicated a gross mistake of the arbitrators or was so perverse as to work manifest injustice to one of the parties was erroneous in failing to furnish the jury any guide to determine what would constitute such a mistake of law as was mentioned in the charge.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 552–556; Dec. Dig. § 238.*]

**4. TRIAL (§ 191*) — INSTRUCTIONS — ASSUMPTIONS AS TO FACTS.**

In an action on an award of arbitrators, an instruction that in determining whether the mistake of law, if any, made by the arbitrators was a gross mistake if the arbitrators considered evidence of an oral agreement between the parties, and if it influenced the arbitrators in arriving at the conclusion that plaintiffs were not bound by the time stipulated in the contract, and the defendant did suffer damage by reason of the default of plaintiffs in the completion of the work, the mistake would be considered a gross mistake, was erroneous in assuming that the arbitrators did arrive at the conclusion that the plaintiffs were not bound by the time stipulated in the contract.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 420–431, 435; Dec. Dig. § 191.*]

**5. ARBITRATION AND AWARD (§ 34*)—PROCEEDINGS—EVIDENCE.**

On an arbitration as to damages from delay in performance of a written contract, the mere hearing of verbal testimony, though inducing a wrong conclusion, was not a gross mistake unless such conclusion would not otherwise have been arrived at.

[Ed. Note.—For other cases, see Arbitration and Award, Cent. Dig. §§ 177–183; Dec. Dig. § 34.*]

**6. ARBITRATION AND AWARD (§ 85*)—ACTION ON AWARD—INSTRUCTIONS.**

In an action on an award of arbitrators as to damages from delay in performance of a written contract, the court should have instructed as to the legal effect of the stipulation in the contract as to damages for delay, and that evidence of verbal stipulations made prior to or at the time of signing the contract, was inadmissible to vary its terms; that if the jury found that the arbitrators or either of them concluded that the written contract, either considered alone or in connection with the evidence of prior and contemporaneous statements, did not entitle the party to damages for delay, the arbitrators made a mistake of law, and if the jury found that such mistake caused them to fail to consider the merits of the claim for delay, and that the party suffered damages by such delay, the award should be set aside and not considered by the jury.

[Ed. Note.—For other cases, see Arbitration and Award, Cent. Dig. §§ 484–503; Dec. Dig. § 85.*]

**7. CONTRACTS (§ 213*) — CONSTRUCTION — NOTICE OF DELAYS IN PERFORMANCE.**

Delays in the performance of a building contract caused by the owner's failure to let the contract for plumbing and by the superintendent's order to finish up the work before the plumber was through do not come under the head of obstruction or delay in the completion of the work by the neglect, delay, or default of any other contractor, for which notice was required by a provision of the contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 957–979; Dec. Dig. § 213.*]

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Action by Crisman & Nesbit against C. C. Slaughter. From a judgment for plaintiffs, defendant appeals. Reversed and remanded.

Towne Young and K. R. Craig, both of Dallas, for appellant. Holloway & Holloway, of Dallas, for appellees.

MOURSUND, J. C. C. Slaughter, appellant, made a written contract with Crisman

& Nesbit, appellees, by which the latter were to destroy an old building on a lot belonging to Slaughter and erect a new one in place of it, and to make alterations and extensions to the existing building adjoining. At the conclusion of the work Slaughter held a percentage of the contract price stipulated to be reserved upon current payments and some items of extras done by the contractors were unsettled, and also items of credits owing Slaughter for work omitted by agreement; also Slaughter's claim for damages for loss suffered because of the contractor's failure to finish the work within the time stipulated in the contract. These matters, under a written agreement, were submitted to three arbitrators, two of whom were named in the agreement, and the third to be selected by them. An award was made by a majority of the arbitrators.

On April 22, 1910, appellees sued Slaughter on said award, attaching to their petition copies of the original contract, the agreement of arbitration, and the award. Defendant's amended answer consisted of exceptions, a special plea that the arbitrators did not comply with the terms of the arbitration agreement in that two of them, without having selected the third arbitrator, determined such of the matters in controversy as they could agree upon, and then selected C. A. Gill as an umpire to determine such matters only as they had been unable to agree upon; also that the arbitrators did not place any witnesses under oath or affirmation; that said agreement provided that they should determine what amount Slaughter was entitled to by reason of plaintiffs' failure to complete their contract within the time prescribed, namely, 217 days after getting full possession of No. 253 Main street, Dallas, Tex., which possession they procured March 15, 1909, thus making their time expire on October 18, 1909; that the work was not completed until March 26, 1910, but arbitrators Gill and Watson permitted plaintiffs to plead and heard statements from them in evidence to the effect that defendant agreed with them orally before the signing of the contract that no damages would be claimed by him for a breach of said contract as to the time within which the work should be completed, and upon said plea and statement said two arbitrators held the written contract not binding upon plaintiffs as to such time limit for completing the work, and that the legal effect of said oral agreement was to abrogate the stipulation in the written contract requiring plaintiffs to complete the work in 217 days; that therefore plaintiffs were not liable for delay in completing the work, and said two arbitrators refused to consider Slaughter's claim for damages on account of delay or the evidence offered thereon. Defendant further alleged that such construction of the contract was flagrantly erroneous and in contravention of the well-established rules of law

that the terms of a written contract cannot be set aside or altered by proof of contemporaneous or antecedent oral agreements between the parties; that such construction of the contract, if enforced, would inflict serious damage to defendant, namely, in the sum of $12,000, the amount he was entitled to have awarded by said arbitration. Defendant prayed that said award be vacated and set aside and plaintiffs relegated to whatever cause of action they had prior to the submission to arbitration. Defendant further answered with general denial allegation of delay by plaintiffs in completing the work, causing damage to defendant in the sum of $12,000, the value of the use of the building during the time of the delay; also claiming $997.75 for work omitted by agreement and $80 for work which plaintiffs failed to perform and which defendant had done.

Plaintiffs filed a supplemental petition containing exceptions and setting up numerous claims of obstructions encountered by them in performing their work, and also setting up a claim for extras. A supplemental answer was filed consisting of exceptions which were sustained. Thereupon plaintiffs filed a trial amendment, to which the same exceptions were urged, but overruled. The Texas Glass & Paint Company filed an intervention for work done under contract with Crisman & Nesbit. The case was submitted to the jury upon special issues, together with special instructions, and verdict returned sustaining the award of the arbitrators and also finding on the special issues submitted with reference to the work done under the contract independent of the award. Judgment was entered in accordance with the award of the arbitrators, ignoring the findings of the jury in other respects; also foreclosing mechanics' lien on the property, and giving interveners judgment for $1,615.68, and foreclosure of mechanics' lien. Defendant appealed.

[1] The first assignment of error complains of the overruling of exceptions to plaintiffs' petition; the second complains of the admission in evidence of the award of the arbitrators. The proposition submitted under these assignments is as follows: "One of the conditions to the validity of the award, as shown by the agreement to arbitrate set out in plaintiffs' amended petition, was that the matters submitted should be heard and determined by three arbitrators. The award showing on its face that before the selection of the third arbitrator the two arbitrators named by the parties investigated and tried the case in part, the award was void on its face and not binding on, nor admissible in evidence against, the defendant."

The agreement to arbitrate reads as follows: "Whereas, certain differences have arisen between C. C. Slaughter and Crisman & Nesbit, growing out of the written contract of March 6, 1909, between said parties, relating to the building of the Slaughter Annex

and alterations to the Slaughter building on Main street, Dallas, Texas; and, whereas, the matters in dispute relate to the following items: (1) The amount of extras, if any, to which Crisman & Nesbit are entitled. (2) The amount of deductions, if any, to which C. C. Slaughter is entitled. (3) The amount of damages, if any, to which C. C. Slaughter is entitled on account of delay in the prosecution and completion of the work. Now, it is agreed that the parties hereto will submit to arbitration the said three matters in controversy between them. There is no dispute as to the amount of the original contract or the payments made thereon, and balance still unpaid upon the contract amounting to $18,181.27. From that amount there is to be added or deducted the amounts that may be found due by the arbitrators from C. C. Slaughter to Crisman & Nesbit and from Crisman & Nesbit to C. C. Slaughter, on account of the three items in controversy submitted to arbitration. And for the purpose of carrying out the arbitration, the matters in controversy, as aforesaid, are hereby submitted to three arbitrators, two of whom shall be W. Illingworth and A. Watson; these two shall select a third disinterested arbitrator. The three arbitrators shall proceed, in such manner as they may deem most convenient, to determine the said matters in controversy between the parties hereto; and for that purpose they may examine the building, plans, specifications, and other papers, and may hear such testimony, under oath or affirmation, as they may deem relevant. If, upon any matter in controversy, the arbitrators cannot all agree, the majority shall govern. The arbitrators shall make a written award in duplicate, to be signed by at least two of such arbitrators, determining the said three matters in controversy, and fixing the net amount due from C. C. Slaughter to Crisman & Nesbit or from Crisman & Nesbit to C. C. Slaughter, as the case may be. Such award shall be final, and the parties hereto bind themselves to abide thereby and to comply at once with such award. The expenses of the arbitration shall be paid, one-half by each party to this contract. Witness our hands in duplicate this 30th day of March, 1910. Crisman & Nesbit. J. S. Nesbit. C. C. Slaughter."

The award reads as follows:

"To C. C. Slaughter, Owner, and Crisman & Nesbit, Contractors. Gentlemen: Your arbitrators, Alex Watson and W. Illingworth, met on the 6th of April and proceeded to investigate the claims for extra work done on the Slaughter building, and also the deductions due the owner for work and material omitted by the contractors. At the third meeting your arbitrators agreed on the selection of C. A. Gill as the third arbitrator. After a thorough investigation of the amount due the contractors for extra work, we find they are entitled to the sum of $2,340.95.

This amount included the different items charged to emergency account, and we are informed that a check has been drawn in favor of Crisman & Nesbit for $357.65, which when accepted by said contractors will leave a net amount due them for extra work the sum of $1,983.30. We also find that C. C. Slaughter is entitled to the sum of $843.00 deductions for work not done by the contractors as provided for by the plans, etc. In regard to the question of demurrage claimed by C. C. Slaughter, we, Alex Watson and C. A. Gill, do not think that his claim is substantiated, therefore we do not allow the claim of demurrage. [Signed] Alex Watson. C. A. Gill.

"I respectfully dissent from this last finding only, and do not think that said finding is justified either by the contract or the evidence. [Signed] W. Illingworth."

There is nothing on the face of the award to show that all three arbitrators did not pass on all matters necessary to be decided. It recites that two of them proceeded to investigate the different claims, but shows the selection of the third arbitrator at the third meeting, and then contains the findings of the three. It does not show that the three arbitrators failed to reinvestigate the matters already gone over by the two named in the agreement. Therefore there was nothing on the face of the award rendering it invalid. The assignments are overruled.

[2] The third assignment complains of the refusal of the court to give special charge No. 2, reading as follows: "If you find from the evidence that the two arbitrators, Watson and Illingworth, before the selection of the third arbitrator, Gill, heard and considered evidence on any of the matters submitted by the terms of the agreement, and came to any judgment or conclusion upon any of the items embraced in any of said matters, and settled any part of any of the matters submitted, before the selection of the third arbitrator, Gill, then the award of said arbitrators is void, and should not be considered by you in any respect, but you will proceed to determine the rights of the parties upon the other evidence introduced in the case, in accordance with the instructions of the court relating thereto."

It is true the testimony of the arbitrators, introduced subsequent to the admission of the award, shows that in fact some of the matters agreed upon by the first two arbitrators were not investigated by the third one, who merely adopted their findings. We are of the opinion that appellant waived any irregularity in the manner of procedure adopted by the arbitrators by submitting to the two arbitrators his version of the conversation had at the time of the making of the contract. Sanders v. Newton, 57 Tex. Civ. App. 319, 124 S. W. 482. He could have declined to do so and insisted that they appoint the third arbitrator, and that every-

thing be passed on by the three. Having appeared and offered testimony both before and after the appointment of the third arbitrator, he took the chances of a favorable award and waived any irregularity in their method of procedure. The assignment is overruled.

[3] Assignments 4, 5, 6, 7, 8, and 9 all relate to the same subject, and raise the issues: (1) Whether the court should, as a matter of law, have held the award void, and instructed the jury not to consider the same. (2) If it was not the duty of the court to hold such award void, then whether the following instruction to the jury is correct, viz.: "You are instructed that the arbitrators are the judges both of the law and of the facts; and, if you believe from the evidence that they have honestly and without partiality to either party exercised their deliberate judgment as to the matters submitted to them, both on the law and the facts, then you are instructed that the award would not be invalidated by any mistake of the law made by the arbitrators, unless such mistake was of such a character as that, on account thereof, they arrived at a different conclusion from what they intended, or unless such findings indicate a gross mistake of, or a manifest injustice on the part of, the arbitrators, or unless such mistake of the law was so perverse as to work manifest injustice to one of the parties." (3) Whether the following additional instruction should have been given at appellant's request: "The court having refused special instructions Nos. 1, 2, and 3, asked by defendant, and having given instruction No. 1, asked by plaintiffs and modified by the court, the defendant, excepting to such action, asks that the court instruct the jury as follows: You are advised, in determining under instruction No. 1, asked by plaintiff and given as modified by the court, whether the mistake of law, if any, made by the arbitrators was a gross mistake, that if the arbitrators heard and considered evidence of an oral agreement between the parties to the contract, or at the time of the signing of it, to the effect that plaintiffs were not to be bound by the time limit fixed by the contract, or that they would not be liable for any damage for failure to perform the contract within the time, then such evidence was illegal, and the admission of it was a mistake. If you further find that such evidence was considered by and influenced the arbitrators in arriving at the conclusion that the plaintiffs were not bound by the time stipulated in the contract for the completion thereof, and that they were not liable to defendant, Slaughter, for failure to perform the work within the time limited, and you further find that defendant Slaughter did suffer loss or damage by reason of the default of plaintiff in the completion of said work, then such mistake would be considered a gross mistake. You

are further advised that if the arbitrators, either upon a consideration of the terms of the contract alone, or upon consideration of the terms of the contract together with evidence of what occurred orally between the parties at the time of or before the execution of the contract, that plaintiffs Crisman & Nesbit were not liable in any event for damages for failure to complete the work within the time stipulated in the contract, such construction was a mistake; and, if any material injury resulted to Slaughter from said construction, then it was such mistake as avoided the award and rendered it not binding on the defendant, Slaughter." (4) If this requested instruction is not correct, then whether it was sufficient to require the court to give a correct instruction on the matter. Clause 6 of the contract between appellant and appellees reads as follows: "The contractors shall and will proceed with the said work, and every part and detail thereof, in a prompt and diligent manner, and shall and will wholly finish the said work according to the said drawings and specifications and this contract, on or before 217 days after getting full possession of 253 Main street, Dallas, Tex."

The arbitrators all testified they heard the testimony of Crisman & Nesbit to the effect that Slaughter had agreed at the time of the signing of the contract to waive all damages for delay, whereupon the clause for liquidated damages of so much per day was crossed out, and also heard the evidence of Slaughter to the effect that he had only agreed to waive the portion calling for a stipulated sum per day for each day of delay, and had said, "Then we will have a contract that won't specify any demurrage, but we will just simply let it rest upon what we can prove, if you are behind time." Arbitrators Illingworth and Gill testified that, after hearing the statements of the parties, Watson and Gill construed the contract as not permitting the recovery by Slaughter of any damages for delay, and that the question was not gone into on its merits, but upon their construction of the contract they refused to consider Slaughter's claim for delay. Watson contradicted them, testifying in substance that, while he construed the contract as not permitting a recovery by Slaughter of damages for delay, yet that they went into the matter and considered his claim and the claim of the contractors for extra time on account of obstructions, and decided that the claims would about offset each other, and for such reason failed to allow Slaughter anything for delay.

The conflict in the testimony of the arbitrators made an issue of fact proper to submit to the jury to find whether or not they disallowed Slaughter's claim for delay because they construed the contract, either by virtue of its provisions or when considered in connection with the evidence relating to

the discussions taking place prior to and at the time of its signing, to be of such character as not to entitle Slaughter to recover for delay. Bowden v. Crow, 2 Tex. Civ. App. 591, 21 S. W. 612. The court, therefore, did not err in refusing the special instruction No. 1 asked by defendant, which was a peremptory instruction to disregard the award of the arbitrators. Special charge No. 1, requested by plaintiffs, was erroneous in that it failed to furnish the jury any guide to determine what would constitute such a mistake of law as was mentioned in the charge. The jury were called upon to form an opinion as to whether a mistake of law was made, but they were not told what the law was, and certainly are not presumed to know the law, and therefore were in no position to pass on the matter.

[4] We do not approve special charge No. 9, but it was amply sufficient to call the court's attention to the defects in plaintiffs' special charge No. 1, given by the court. The first paragraph of said charge No. 9 assumes that the arbitrators did arrive at the conclusion that plaintiffs were not bound by the time stipulated in the contract for the completion thereof, and were not liable to Slaughter for failure to perform the work within the time limited. The second paragraph does not assume such conclusion, and, with the exception of a word omitted, is found unobjectionable.

[5] We are also of the opinion that the mere hearing by the arbitrators of the verbal testimony, even though it was considered by and influenced them in arriving at a wrong conclusion, would not constitute a gross mistake, unless such conclusion would not have been arrived at without such oral evidence, and for such reason disapprove the first paragraph of said charge. It is proper for the court to construe the legal effect of written instruments introduced in evidence. San Antonio v. Lewis, 9 Tex. 71; Collins v. Ball, 82 Tex. 269, 17 S. W. 614, 27 Am. St. Rep. 877; Tinsley v. McIlhenny, 30 Tex. Civ. App. 358, 70 S. W. 793. In Ency. Dig. of Texas Decisions, vol. 6, p. 659, the following rule is announced: "Where there is no ambiguity in a written contract, its terms must be regarded as expressing the entire contract between the parties"— and on the succeeding page the following doctrine is stated: "In general the rule is that parol evidence is inadmissible to explain, vary, alter, or add to the terms of a written contract." On page 662 of same volume, citing Soell v. Hadden, 85 Tex. 182, 19 S. W. 1087, it is said: "Parol evidence is not admissible to show the construction placed upon a written contract by the parties, where the intent is expressed in the writing." These rules are amply supported by Texas decisions cited in connection therewith.

[6] The court should have instructed the jury in this case as to the legal effect of the clause of the contract in question, then that evidence of verbal stipulations or agreements made prior to or at the time of signing the contract was inadmissible and incompetent to vary the terms of the contract; that if the jury found from the evidence that the arbitrators Watson and Gill, or either of them, concluded that the written contract, either when considered alone or in connection with the evidence of prior and contemporaneous statements made by the parties, did not entitle Slaughter to recover damages for delay in the completion of the building, then such arbitrators or arbitrator, as the case may be, made a mistake of law in arriving at such conclusion, and if the jury further found that such mistake of law, if any, caused said two arbitrators, or either of them, to fail to consider the merits of Slaughter's claim for delay, and further found that in fact the building was not completed within the time stipulated in the contract, and that Slaughter suffered damages by reason of such delay, then if they so found the award should be set aside and not considered by the jury, but they should consider the case as if no agreement for arbitration had ever been made.

Assignments 4, 5, and 7 are overruled. Assignments 6, 8, and 10 are sustained. Assignment No. 4 is only overruled because the special charge, upon the refusal of which it is based, does not require the jury, in addition to the other matters, to also find that Slaughter suffered damages by reason of delay in completing the building. If no damages were suffered, then no injury was done by any mistake made. It would not be proper to pass upon assignment No. 10, in view of another trial, as it involves the question of sufficiency of the evidence to sustain the award. Assignments 11 and 12 are overruled. Assignment 13 is sustained.

[7] Assignment 14 is overruled. Delays caused by Slaughter's failure to let contract for plumbing, and by the superintendent's order to finish up the work before the plumber was through, do not come under the head of obstruction or delay in the completion of the work by the neglect, delay, or default of any other contractor, and are therefore not covered by section 7 requiring written notice of delays. Any delay caused by the other contractors themselves would be covered by this clause. When the parties agree on written notice, they are entitled to rely upon same, and in the contingencies provided for by the contract no delay should be allowed for unless the notice was given as provided by said section 7. The object of requiring such notice doubtless was to give Slaughter a prompt opportunity to investigate such causes of delay and take steps to put an end to the same. For instance, if an alteration is desired, certainly if the contractor considers the same of sufficient seriousness to entitle him to additional time, no injustice is done by requiring him to give notice of the time

he will be delayed in making the same. The provision for notice applies to no other act of the owner or his superintendent than that of requiring alterations, and cannot be extended so as to require notice of other acts of the owner and superintendent which cause delays in completing the work. Assignments 15 and 18 are overruled for reasons given in discussing No. 14. The sixteenth and seventeenth assignments are overruled. Assignment 19 is sustained: The evidence was sufficient to require the submission of this instruction. The twentieth assignment relates to sufficiency of evidence, and in view of another trial will not be considered.

On account of the errors pointed out, the judgment is reversed, and the cause remanded.