CHARLES AND THOMAS TINSLEY v. S. K. McILHENNY ET AL.

Decided November 10, 1902.

1.—Charge—Construing Written Instrument—Undisputed Evidence.

It is not upon the weight of evidence for the court's charge, in an action of debt upon a written contract, to construe the legal effect of the written instruments in evidence and of the other undisputed evidence in the case, and to instruct that their effect is to render the defendant liable in a designated sum.

2.—Action of Debt—Measure of Damages—Credits—Collaterals—Burden of Proof.

Where the action was for debt upon a note, rather than for damages for breach of a collateral contract, the measure of damages was the amount due upon the note, less the credits to which it was entitled; and the burden of proof was on the defendants to show the credits arising from the sale of collaterals, and that the collaterals were sold at a fair price.

3.—Note—Judgment Upon—Payment.

Where the payee of a note recovers judgment thereon against the maker, the maker may, without showing payment of the judgment, maintain an action against another for the latter's failure to pay the note according to an agreement so to do.

Error from the District Court of Harris County. Tried below before Hon. Chas. E. Ashe.

*Jacob C. Baldwin,* for plaintiffs in error.

*Hutcheson, Campbell & Hutcheson,* for defendants in error.

PLEASANTS, ASSOCIATE JUSTICE.—This is a suit for damages for breach of contract and to foreclose a lien on land given to secure the performance of said contract. The contract sued on and the lien sought to be foreclosed are evidenced by the following instruments:

"This agreement made and entered into this 25th day of March, A. D. 1895, by and between S. K. McIlhenny, party of the first part, and Charles Tinsley, party of the second part. Be it known, the party of the first part hereby agrees to sell, and does sell, to party of second part, twenty thousand ($20,000) dollars, par value of Reeves and Martin County, Texas, 6 per cent bonds, being fourteen thousand ($14,000) dollars of Reeves County, Texas, compromise court house and jail bonds; two thousand ($2000) dollars of Martin County, Texas, compromise courthouse and jail bonds, and four thousand ($4000) dollars of Martin County, Texas, road and bridge compromise bonds, for the sum of fifteen thousand ($15,000) dollars. Said bonds are now being held by the Planters and Mechanics National Bank of Houston, as collateral, to secure the payment of a note for fifteen thousand ($15,000) dollars made and signed by James R. Masterson and party of the first part, said note being represented to party of second part by S. K. McIlhenny as being of the usual form of notes used by banks. Said party of second part, wishing to avail himself of the time said note has to run, viz., until May 6, 1895, hereby agrees and binds himself to pay,

discharge and retire the said note of said Masterson and McIlhenny to said Planters and Mechanics National Bank on or before maturity of same. In the meantime the party of the second part is to have full charge of the disposing of said bonds, all or any part thereof, so far as can be arranged with said Planters and Mechanics National Bank.

(Signed) "CHARLES TINSLEY.

"S. K. MCILHENNY.

"I hereby guarantee the fulfillment of this contract by Charles Tinsley. <span style="float:right">(Signed) "THOMAS TINSLEY."</span>

"The State of Texas, County of Harris. Know all men by these presents, that Charles Tinsley and Thomas Tinsley, being justly indebted to James R. Masterson and S. K. McIlhenny in the sum of fifteen thousand dollars, for twenty thousand dollars of Reeves County and Martin County, Texas, bonds, the payment of which they desire to assure and secure to the said James R. Masterson and S. K. McIlhenny, in consideration thereof, and for the purpose set forth, and in consideration of ten dollars to me in hand paid, the receipt whereof is hereby acknowledged, I, Thomas Tinsley, have granted, bargained and sold, and by these presents do grant, bargain, sell and convey unto James R. Masterson and S. K. McIlhenny, of the county of Harris, in the State of Texas, the following described property: An undivided interest of fifteen hundred acres in 2020 acres of the Mary Bigger survey, situate about 20 miles N. W. of Austin, in Travis County, Texas, at present owned by Thomas Tinsley free and clear of all incumbrances, except taxes, and of which a more complete description is to be found in Travis County deed records. Together with all and singular the rights and appurtenances to the same belonging. And Thomas Tinsley do bind himself, my heirs, executors and administrators to warrant and forever defend all and singular the said property unto the said James R. Masterson and S. K. McIlhenny, their heirs and assigns, against the claim or claims of any or all persons lawfully claiming the same, or any part thereof.

"This conveyance is intended as a mortgage upon the following terms, to wit: In the event the said Charles Tinsley and Thomas Tinsley shall pay to the said Masterson and McIlhenny the sum of fifteen thousand dollars for said Reeves and Martin County bonds, then all herein contained to be null and void and of no effect. The words, 'I, Thomas Tinsley,' were inserted before signing; also the words 'Thomas Tinsley' on the second line from the bottom on the first page were inserted before signing.

"In testimony whereof, I sign my name this seventh day of May, A. D. 1895.

(Signed) "THOMAS TINSLEY.

"Acknowledged before Alfred Wisby on the 7th day of May, 1895."

The petition alleges that the defendants failed to comply with their contract and pay the $15,000 note described therein, and plaintiffs were forced to pay the same, and they pray for judgment against the defendants for damages in the sum of $20,000, and for foreclosure of the lien created by the mortgage above set out on the land therein described.

The defendant Charles Tinsley answered admitting the execution of the contract for the purchase of said bonds, but averred that he entered into said contract believing that the plaintiff McIlhenny was the owner of 6 per cent bonds of Reeves and Martin counties, Texas, of the "par value of $20,000," and that the plaintiffs did not in fact own bonds of said counties of the "par value of $20,000," nor were bonds for that amount then held by the Planters and Mechanics National Bank of Houston as collateral to secure the payment of said notes, and that plaintiffs have never at any time tendered or offered to deliver to these defendants bonds of said counties of the par value of $20,000 in accordance with the terms of said contract. He further averred that plaintiffs only owned and had in said bank at the date of said contract bonds of the face value of $19,360, and were wholly unable to carry out their said contract, to defendants' damage in the sum of $5000; that about the date of said contract the plaintiff McIlhenny detached from said bonds, which he had contracted to sell to defendants, coupons representing unmatured interest and 2 per cent of the principal of said bonds of the aggregate face value of $1374.40, and sold and delivered same to this defendant for a tract of land in Gray County, Texas, of the value of $1520; that this defendant did not then know that plaintiffs were unable to deliver the bonds contracted for, nor that the detaching of said coupons from said bonds would reduce them to less than $20,000 par value, and that this transaction was wholly unknown to his guarantor, Thomas Tinsley; that plaintiffs failed and refused to make up the deficiency in the face value of said bonds caused by detaching said coupons, and tried to force the defendants to take said bonds and pay the full amount of $15,000 agreed to be paid for bonds of the face value of $20,000. That on or about the date of the contract the defendant, Charles Tinsley, paid to McIlhenny $500 in cash on said contract. That on May 1, 1895, he paid $300. That on May 20, 1895, defendant sold, by and with the consent of plaintiffs and the bank, four of Reeves County bonds of the denomination of $500, less 4 per cent of the principal, retired in payment of two coupons, for the sum of $1728, which was paid to the Planters and Mechanics National Bank. That on February 27, 1896, the defendant, by and with the consent of the plaintiffs and said bank, sold twenty-four Reeves County bonds of the denomination of $500 each, less 4 per cent of the principal, which had been retired by the payment of two coupons, for the sum of $10,075, which said amount was paid to the plaintiffs' agent, or parties designated by the plaintiffs and the Planters and Mechanics National Bank to receive the same. That on October 4, 1897, the defendants

sold, at plaintiffs' request and the request of said bank, certain coupons attached to said bonds for the sum of $205.30, which was turned over to the plaintiffs; that on November 29, 1897, and after the filing of this suit, the plaintiffs, without the knowledge or consent of this defendant or his guarantor, sold and disposed of eight of said bonds of the denomination of $500 each, the face value and the market value of which was $4000, for the sum of $2500, which amount they applied to their own use and benefit, and that the plaintiffs applied to their own use and benefit the remaining four bonds of the denomination of $500 each, less 4 per cent of the principal retired in the payment of the coupons, the market value of said bonds being $1920. That the market value of all of said bonds hereinbefore mentioned and referred to at the time the plaintiffs alleged they paid said note, and at the maturity of said note, and at the date of the contract sued on herein, was $18,000. That the market value of said bonds, if they had been par value bonds, as plaintiffs bound themselves to deliver to these defendants, would have been $20,000; that at the maturity of said note, the plaintiffs converted said bonds to their own use and benefit, and had failed and refused to deliver said bonds to the defendant. That all of said bonds bear interest at the rate of 6 per cent per annum, which was evidenced by the coupons attached to said bonds, which coupons were by the plaintiffs detached from said bonds and appropriated to their own use and benefit. That by reason of the fact alleged, the defendant owes plaintiffs nothing, and the plaintiffs are indebted to the defendant to the amount of his damages, to wit, the sum of $5000, praying for judgment for said damages, costs of court and general and special relief.

The defendant Thomas Tinsley adopted the answer of his codefendant, and further pleaded that in June or July, 1895, he notified the plaintiff S. K. McIlhenny that he would no longer be bound by said contract, because he had learned that there was not $20,000 worth of bonds, and never had been, attached to said note, and that by reason thereof the plaintiffs were put upon notice that they should sue at once the principal obligor in said contract, the sole party liable, if any were in fact liable to them. That subsequent to said notice the plaintiffs entered into another contract with Charles Tinsley with reference to the subject matter sued on, which said contract was in lieu and a substitution of the original contract, and that by the making of said contract said defendant was released from all obligation under his contract of guaranty. He further alleged that the consideration for said guaranty had failed, and said guaranty was not binding upon him for the reason that at the time of said contract and of making said guaranty, the plaintiffs did not have attached to said note $20,000 of bonds, nor in the possession of plaintiff or of said bank, and the said defendants have never tendered the bonds for said $15,000, and the guarantor had received no consideration for said promise and undertakings, as set forth in plaintiffs' petition, and there had been a total failure of consideration for the promise and undertakings.

As a further ground for release from his contract he pleaded that the plaintiff McIlhenny falsely represented to him that the plaintiff Masterson had no interest in said bonds, and averred that he would not have guaranteed the contract had he known that Masterson had an interest in same, nor would he have guaranteed the same had he known that plaintiffs did not then own bonds described in said contract of the face value of $20,000.

The cause was tried by a jury, and under instruction from the court a verdict was returned for plaintiffs for the balance due upon said $15,000 note, after crediting same with such payments as the jury found from the evidence had been made thereon by the defendants and the proceeds of the sales of said bonds. From a judgment rendered in accordance with this verdict, and foreclosing the lien on the land described in the mortgage, the defendants below prosecute this writ of error.

The material facts disclosed by the record are as follows: The note for $15,000 due the bank was not paid at maturity, and was renewed by plaintiffs from time to time by the execution of new notes for the balance due on the original debt, after crediting same with the proceeds of the several sales of bonds. The first sale of bonds was made by Charles Tinsley in February, 1896. This was a sale of twenty-eight of the Reeves County bonds, of face value of $14,000, the amount realized therefor being $9486.50. The next sale was of interest coupons and realized $205. This sale was in October, 1897, and was also made by Charles Tinsley. After these sales were made and the proceeds thereof paid upon the note the bank sued McIlhenny and Masterson for the balance due upon the note. Pending this suit, Masterson, with the consent of the bank, sold eight of the bonds of the face value of $4000 for $2500, which amount was also credited upon the note. The suit then proceeded to judgment, and the bank recovered against McIlhenny and Masterson for the balance due upon the note. Upon this judgment an execution was issued under which the remaining four bonds were sold by the sheriff and the proceeds of the sale credited upon the judgment. The balance due upon the judgment was paid or secured to be paid by Masterson. The bank did not recognize the Tinsleys as having any interest in the bonds, or as being responsible to it for the payment of the note, and its dealings in the matter were entirely with McIlhenny and Masterson. It was agreed between the latter and Charles Tinsley that he, being a broker, should have the sale of the bonds, and the contract before set out expressly gives him that right. Prior to the execution of the mortgage by Thomas Tinsley he and Charles Tinsley agreed, as a consideration for its execution, that he should have an interest in the profits that might be made out of the purchase and sale of the bonds. The twenty-eight Reeves County bonds sold by Charles Tinsley were sold in Austin. He notified Masterson that he had effected a sale of these bonds, and at the latter's request the bonds were forwarded to Austin by the bank and the money

paid to its correspondent at that place, and as soon as its receipt was made known to the Houston bank it was credited upon the note. The $205 sale of interest coupons and the sale made by Masterson of the eight bonds before mentioned were made in the same way. It is not shown by the evidence that either of the Tinsleys ever had any of the bonds in their possession, or ever saw them. On the day the contract was made $1374.40 of coupons were detached from the bonds by McIlhenny and delivered to Charles Tinsley, and were sold by him. The proceeds of these coupons were not credited on the note. Thomas Tinsley testified that the delivery of these coupons to Charles Tinsley was without his knowledge or consent, and that McIlhenny told him that Charles Tinsley gave him a tract of land in Gray County for said coupons. Masterson testified that no land was given for the coupons, but that Charles Tinsley sold them and failed to pay the proceeds upon the note; that he thought the money ought to have been paid on the note, and was dissatisfied with McIlhenny for allowing Charles Tinsley to keep same. He further stated that most of the coupons represented matured interest due upon the bonds at the time the contract of sale was made. Neither Charles Tinsley nor McIlhenny testified in the case. There is no evidence that these bonds had a fixed market value at the time the contract was executed, nor when the several sales before mentioned were made. Charles Tinsley tried to effect a sale of the eight bonds afterwards sold by Masterson, but was unable to find a purchaser. Thomas Tinsley was not consulted in the sale of any of these bonds, and he testified that he did not consent to their sale. He further testified that he was told by Charles Tinsley before he guaranteed the contract for the purchase of the bonds that Masterson had no interest in the bonds or in the contract, and that he would not have signed the contract if he had known that Masterson was interested in it. He also testified that he had never signed an instrument acknowledging that he and Charles Tinsley were indebted to McIlhenny and Masterson in the sum of $15,000. In addition to the instruments in writing before set out the plaintiffs introduced in evidence the original note executed by McIlhenny and Masterson to the bank, and the following assignment of the bonds in question which was attached to said note:

"Having conveyed to said bank as collateral security for the payment of this note $2000 in Martin County bonds, $4000 Martin County bridge bonds, Nos. 1, 2, 3, 4, 5, 6, 7, 8, and 10, for $500 each; $14,000 Reeves County bonds, Nos. 6, 7, 8, 9, 10, 11, 12 and 14 to 34, inclusive, twenty-eight bonds, $500 each."

It was admitted on the trial that Charles Tinsley was present when the instrument of date May 7, 1895, was executed by Thomas Tinsley, and knew the contents of said instrument. The execution of the original contract was also admitted by both defendants, and both defendants, by their attorney, declared that this stood upon the two instru-

ments as written, and that said instruments speak for themselves. These admissions appear in the statement of facts.

Upon these facts the trial court instructed the jury, in substance, that the legal effect of the written instruments introduced in evidence and of the other undisputed evidence in the case was to render the defendants liable to pay to the plaintiffs the sum of $15,000 for the purchase of the bonds before described, with 6 per cent interest per annum on said $15,000 from May 6, 1895, until same was paid, with a right in the bank and plaintiffs to resell said bonds and apply the proceeds of such sale to the payment of said $15,000 obligation, and that the jury should find for plaintiffs the balance due upon said obligation, less the credits which they might find same entitled to under additional instructions given therein.

This charge is assailed by the first assignment of error on the ground that it is upon the weight of evidence, and because it instructs the jury to allow plaintiffs interest on the $15,000 note from May 7, 1895, when the contract only bound defendants to pay said note at its maturity, and further because it fixes an erroneous measure of damage, the true measure of damage being the difference between the market value of the bonds at the date of the maturity of the note and the price agreed to be paid for them by the defendants.

We do not think any of these objections to the charge are valid. It was proper for the court to construe the legal effect of the written instrument introduced in evidence, and the exercise of this prerogative does not make the charge obnoxious to the rule which forbids the court to charge upon the weight of the evidence. Dorr v. Stewart, 3 Texas, 481; San Antonio v. Lewis, 9 Texas, 71; Collins v. Ball, 82 Texas, 269.

We think the instructions that plaintiffs would be entitled to recover interest at 6 per cent from May 7, 1895, was not error of which the defendants can be heard to complain. Under a proper construction of the contract defendants might, we think, be held liable to pay the interest called for in the note from the date of the execution of the contract, and it is clear that plaintiffs were entitled to recover interest at 6 per cent from May 7, 1895, the date on which both defendants acknowledged that they were indebted to plaintiffs in the sum of $15,000.

As we construe the contract plaintiffs' cause of action is for debt rather than for damages for breach of contract for the sale of property, and it follows that the true measure of damages is the amount due upon the note, less the credits to which the evidence shows the same to be entitled. The contract of sale of the bonds was completed and the title to the bonds vested in Charles Tinsley on the date of the execution of the contract, subject to the lien of the bank to secure the payment of the note. The original guarantor, Thomas Tinsley, by subsequent agreement with Charles Tinsley became a partner in the transaction and primarily liable for the payment of the purchase money, which liability he duly acknowledged in writing on the 7th day of May, 1895.

Under this view of the case it becomes unnecessary to discuss the remaining assignments of error, all of which are predicated upon the theory that the measure of damages applicable to a breach of an executory contract of sale is the measure of damage which should be applied in this case, and that the rights and liabilities of Thomas Tinsley are those of a guarantor. As we think neither of these contentions is sound, none of the assignments can be sustained. The burden was upon the defendants to show the credits to which the note was entitled, and the sale of the bonds under the lien held by the bank being in accordance with the terms of the agreement creating the lien, the burden was upon the defendants to show that they were not sold for a fair value.

We are of opinion that the record shows no error that requires a reversal, and the judgment of the court below is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

In our opinion filed in this case on the 10th day of November, 1902, we stated as a conclusion of fact that the balance due on the judgment in favor of the bank had been paid or secured to be paid by Masterson. We find that this conclusion is not sustained by the evidence. Masterson testified that it had all been paid but a small amount, but there is no evidence that the unpaid balance had been secured in any way by Masterson. We make this correction at the request of plaintiffs in error, though we do not regard the finding as at all material. The judgment in favor of the bank was against Masterson, and he, being liable therefor, could recover under his contract with plaintiffs in error the amount due thereon without showing that he had paid or secured the payment of the judgment.

*Overruled.*

Writ of error refused.