CLOSNER et al. v. CHAPIN. (No. 5308.)†

(Court of Civil Appeals of Texas. San Antonio. June 10, 1914. On Motions for Rehearing by appellants and appellee, July 1, 1914.)

1. VENUE (§ 22*)—PLEA OF PRIVILEGE.

Where a defendant was in court on the petition of plaintiff and on a cross-petition of a codefendant, and an amended cross-petition presented after satisfaction of plaintiff's claim merely repleaded the cross-petition, the plea of defendant's privilege to be sued in another county was properly overruled.

[Ed. Note.—For other cases, see Venue, Cent. Dig. §§ 35–37; Dec. Dig. § 22.*]

2. DEEDS (§ 145*)—CONDITIONS—FORFEITURE.

A deed whereby the grantor, in consideration of a nominal sum and of the grantee's assumption of the grantor's debts, conveys real estate unconditionally, and a contemporaneous

contract by which the grantees bind themselves to pay all the debts connected with or arising out of the property, when construed together, as they must be, vests in the grantees the property, and the agreement to pay the debts is a covenant and not a condition, and a breach thereof does not work a forfeiture of the conveyance.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 471; Dec. Dig. § 145.*]

3. VENDOR AND PURCHASER (§ 253*)—LIEN OF VENDOR—FAILURE TO RETAIN—EFFECT.

A deed which does not retain a vendor's lien evidences an executed sale, and the title passes to the grantee.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 637–640; Dec. Dig. § 253.*]

4. COVENANTS (§ 107*) — CONSTRUCTION — ASSUMPTION BY GRANTEE OF GRANTOR'S DEBTS.

An assumption by a grantee of the debts of the grantor does not give the grantor a right of action unless the grantee has refused to pay the debts and the grantor has paid them or some of them.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. §§ 173, 174; Dec. Dig. § 107.*]

5. COVENANTS (§ 26*) — CONSTRUCTION — ASSUMPTION BY GRANTEE OF GRANTOR'S DEBTS.

A contract whereby a grantee, in consideration of an unconditional conveyance, assumes the debts of the grantor incurred either individually or jointly with others in connection with the properties conveyed, as set forth in a list, is a divisible contract, and the grantor may only recover for such damages as may arise from the payment by him of any debt the grantee fails to pay.

[Ed. ·Note.—For other cases, see Covenants, Cent. Dig. § 25; Dec. Dig. § 26.*]

6. INDEMNITY (§ 11*)—CONSTRUCTION OF CONTRACT—ASSUMPTION BY GRANTEE OF GRANTOR'S DEBTS.

A contract whereby a grantee assumes the debts of the grantor is one of indemnity, and a mere delay of the grantee in the payment of debts does not support an action by the grantor sustaining no damage by the delay.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. §§ 21–25; Dec. Dig. § 11.*]

On Motions for Rehearing by Appellants and Appellee.

7. JUDGMENT (§ 251*)—CONFORMITY TO PLEADING.

A petition, in an action by a grantor against the grantee assuming, as a part of the consideration, to pay the grantor's debts, which seeks to recover the value of the land conveyed, and which does not seek a recovery of any of the debts paid by the grantor, and which merely sets forth a payment of a debt by the grantor to show a breach by the grantee of the contract and not as a basis for the recovery of the amount paid, does not justify judgment for the grantor for the amount of the debt paid.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 437; Dec. Dig. § 251.*]

8. DAMAGES (§ 71*)—BREACH OF CONTRACT—MEASURE OF DAMAGES—ATTORNEY'S FEE.

The payment of an attorney's fee caused by breach of contract is not an element of actual damages for the breach.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 146, 153; Dec. Dig. § 71.*]

9. DAMAGES (§ 71*)—BREACH OF CONTRACT—MEASURE OF DAMAGES—ATTORNEY'S FEE.

A grantor suing for a rescission on the ground of the grantee's breach of contract to pay the debts of the grantor, assumed as a part of the consideration of the conveyance, may not recover attorney's fees incurred in the action.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 146, 153; Dec. Dig. § 71.*]

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Action by Clark & Bliss against D. B. Chapin and against John Closner and ' another, in which defendant Chapin filed an answer admitting the claim against him and filed a cross-action against codefendants John Closner and another. From a judgment for defendant D. B. Chapin against codefendants, both parties appeal. Affirmed in part, and reversed and rendered in part.

Jas. B. Wells, of Brownsville, Ball & Seeligson, of San Antonio, Joseph K. Wells, of Brownsville, and C. W. Trueheart and T. T. VanderHoeven, both of San Antonio, for appellants. T. J. Newton, of San Antonio, John T. Duncan, of La Grange, and Don A. Bliss, of San Antonio, for appellee.

FLY, C. J. Clark & Bliss, attorneys at law, filed suit against D. B. Chapin, who will be designated as appellee, although he is also an appellant, John Closner and W. F. Sprague, known herein as appellants, and the Chapin Townsite Company, to recover a fee of $2,000 and $66.90 expenses; said fee and expenses accruing in connection with a receivership case in Fayette county, Tex. Chapin filed an answer admitting the claim against him and filed a cross-action against Closner and Sprague for damages in the sum of $646,276 and for a foreclosure of a lien on certain property described therein. The court sustained special exceptions to 8 of the 26 paragraphs of the cross-action. The court, having tried the cause without a jury, recited in the decree that Clark & Bliss had been paid in full and adjudged that appellants should pay appellee $100 damages arising out of the forced sale of a tract of appellee's land, and that the Chapin Townsite Company should be dismissed from the suit.

The greater portion of the cross-action is devoted to a narrative of the relations existing between appellants and appellee which led up to certain written instruments whereby appellee sold and conveyed to appellants his interest in certain lands in Hidalgo county, all of his stock in the Chapin Townsite Company and in the Valley Reservoir & Canal Company, and all of his interest in a certain railroad property known as the San Antonio & Rio Grande Railway Company. In consideration of that conveyance, appellants bound themselves to pay all of Chapin's indebtedness "incurred either individually or jointly with others in connection with said properties at any time and bind ourselves and each of us to save and hold harmless the said Chapin as to said indebtedness"; and, after the indebtedness and all reasonable expenses had been paid, they agreed to pay

appellee his proportion of the profits arising from the property. A list of the debts for which they became liable was set out in the agreement; one of them being a note for $2,000 in favor of J. W. Johnson. The contracts were executed separately at the same time and place.

[1] On May 1, 1913, appellants paid the full amount of the attorney's fee sued for by Clark & Bliss, and it was accepted by them in full for all of their claims. Before the money was paid and accepted, the court had sustained demurrers to a cross-action by Chapin against Closner and Sprague, and there was, at the time of payment of the money and its acceptance, no further cause of action on the part of Clark & Bliss pending against appellants, which fully appears from an order of the court which recites all the facts concerning the matter. After this full settlement appellee filed what is denominated "Defendant D. B. Chapin's First Amended Original Answer and Plea Over Against his Codefendants, John Closner and W. F. Sprague." Appellants were in court on the cross-bill as well as on the petition, and as the amended cross-bill did not set up a new cause of action, but merely repleaded the old one, the plea of privilege to be sued in Hidalgo county was properly overruled. Kendall v. Hackworth, 66 Tex. 499, 18 S. W. 104.

It is somewhat difficult to ascertain the true nature of the cross-action. There is a prayer for damages, but it is clearly indicated in the pleading that appellee desired a rescission and did not pray for "his interests in the properties in specie" because they had been incumbered with mortgages. The effect of the pleadings would be a rescission, for there is a prayer for the full value of the property, less the debts that had been paid and the expenses that had been incurred. It not only had the effect of rescinding the contract, but of forcing a cash payment for property that had been sold to appellants, incumbered with the burden of paying for an indefinite time a certain proportion of the profits realized from the property. We are of opinion that the suit is, to all intents, one for rescission.

[2] The deed given by appellee was unconditional in its terms, conveying the property to appellants; the consideration recited being $1 and the assumption by appellants of all the indebtedness of the grantor. It had the effect of investing the title to the property in the grantees and creating an equitable lien on it in favor of the creditors of the grantor at the same time that the grantees became personally liable for the debts. This would be true although the grantees had not signed the deed as contracting parties, but had taken possession of the property. In this case, however, there was the execution of a contemporaneous agreement by which appellants bound themselves to pay all debts connected with or arising out of the property, and this of course made the grantees liable for such debts. The two instruments must be construed together. Courts are inclined to construe such provisions in deeds as covenants rather than conditions, whenever it can be done so, because forfeitures are not favored, and the violation of a covenant results in a recovery of damages, while the breach of a condition forfeits the estate. If the deed was made on the conditions set out in the agreement, the failure of any one of the conditions, however trivial it might be compared to the property conveyed, would work a forfeiture of the estate. The law would not favor such a construction unless it was plainly designated or clearly inferable from the language of the two instruments. Rawson v. School District, 89 Mass. (7 Allen) 125, 83 Am. Dec. 670; Ayer v. Emery, 96 Mass. (14 Allen) 67. In the case last cited the Supreme Judicial Court of Massachusetts held:

"Taking the deed and the lease as one instrument, intended to embody the agreement of the parties as to the possession and enjoyment of the premises therein described, they are susceptible of the construction that the grantor of the tenant intended to rely on the personal covenants of the latter to fulfill the various stipulations set out in the two instruments, and not make his grant conditional on their performance. It certainly is not reasonable to suppose that the parties intended that a failure to fulfill any one of the many stipulations which entered into the consideration of the grant, however trivial or unimportant, should work a forfeiture of the estate; and yet such would be the result, if the deed is construed as a grant on condition."

That was said in a case in which it was stated in the deed that the consideration was certain cash and the performance by the grantee of "all the agreements on his part contained in an indenture hereto annexed or written on the other half of this sheet."

In this case the deed contains no conditions and does not reserve any lien, but is a plain, unequivocal deed to the property; the consideration being the promise of payment of the debts of the grantor.

[3] The vendor's lien not being expressly retained in the deed, it evinced an executed sale, and the title to the property passed to the grantees therein. Baker v. Compton, 52 Tex. 252. In that case, after stating that all the cases cited by the appellees were those in which a vendor's lien was expressly retained, the court said:

"In the opinion of the writer, the decisions of this court show a broad line of demarkation between such case and the one at bar, holding that the former are executory contracts, in which the superior title remains in the vendor, but classing the latter as executed contracts, in which the vendor has parted with his title, and has only the implied vendor's lien for the unpaid purchase money."

The case has been often approved. Rindge v. Oliphint, 62 Tex. 682; Ransom v. Brown, 63 Tex. 188; Railway v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39; Lipscomb v. Fuqua, 55 Tex. Civ. App. 535, 121 S. W. 193; Buckley v. Runge (Civ. App.) 136 S. W. 533.

It follows, from the authorities cited, that

appellee could not prosecute a suit for rescission, and, while he did not in terms institute such a suit, his action, to all intents and purposes, amounted to an action to rescind, because he sued for the full value of the property and represented that he would have sued for the property in specie, had it not been for the creation of certain mortgages. It was in effect a suit for the forfeiture of the deed.

[4] The immense damages sought to be recovered had no basis whatever in the pleading. Appellee did not allege that he had been compelled to pay any of the debts against which he was indemnified by appellants, but, on the other hand, it is apparent from the pleadings that he had not paid off any of the debts. The assumption by appellants of appellee's debts gave him no right of action against them, unless they had refused to pay the debts and appellee had paid them or some of them. This principle is established, not only in Texas, but in other states. Gunst v. Pelham, 74 Tex. 586, 12 S. W. 233; Thomas v. Ellison, 102 Tex. 354, 116 S. W. 1141; Lappen v. Gill, 129 Mass. 349; Ayers v. Dixon, 78 N. Y. 318; Gregory v. Green (Civ. App.) 133 S. W. 481; and same case 142 S. W. 999. The case of Gregory v. Green, decided by this court, is directly in point, and it was held therein:

"Plaintiff had no right of action against defendant until she paid the notes, in whole or in part, either in money or with her property. According to the petition, defendant's undertaking was to pay off the notes and leave plaintiff's other lot clear, and this contract was not breached in such manner that plaintiff could maintain an action against defendant thereon, until the trustee's sale which deprived her of her remaining lot."

We have seen no case in Texas that is in conflict with the cases herein cited, and, on the other hand, in the latest enunciation of the Texas courts the cases of Gunst v. Pelham and Gregory v. Green are approved; the court holding:

"In our state, however, contracts to pay the debt of another are treated as contracts of indemnity only, and it is held that one complaining of the breach of such a contract must, in order to show himself entitled to recover, show that he has paid the debt in controversy."

The court, speaking of the Gunst-Pelham Case, said:

"We have not found where the authority of this decision has been disturbed. On the contrary, it has been cited and followed in a later case by the Court of Civil Appeals for Fourth District." Bank v. Wallace, 161 S. W. 957.

It may be added that the Gunst-Pelham Case has been cited with approval in the case of Thomas v. Ellison, herein cited. The point is too well settled by the courts of Texas to justify further discussion.

[5] As hereinbefore stated, if this is treated as a suit for damages, and not for rescission, and if the contract is considered as being entire and not divisible or separable, the pleadings fail to set up any damages further than the $100 allowed by the court.

An analysis of the paragraphs of the cross-action, to which exceptions were sustained, will show the correctness of this view.

The nineteenth paragraph of the cross-action alleged the failure of appellants to pay off a note for $4,000, executed by G. B. Brown and secured by a mortgage on certain property, not included in the property sold by appellee to appellants; the appellee had an opportunity to sell the land to one Stewart, but failed to do so because the debt of Brown was not paid, and that he had to discount other paper in order to lift the mortgage, and thereby lost $800. There is no allegation that any one was seeking to enforce the collection of the note, or that its time of payment had not been extended, or that appellee paid it off, or, if he did, that he had not been repaid. If it had been paid off, appellee would probably have alleged damages in the amount of the note, principal and interest, but he laid as his damages the sum of $800, which arose in some manner not revealed by appellee. The paragraph was too vague and indefinite to form the basis for an action for damages, and a demurrer to it was properly sustained. Paragraph 20 is open to the same objection. There is no allegation of the failure to pay any debts or to do or not to do anything that might form the basis for damages, and no demand is made for an accounting by appellants.

Paragraph 21 of the cross-bill is so general and indefinite as to be incapable of upholding an action for damages. How appellants were "juggling" with the property does not appear, nor is it alleged that $35,000 was not a fair price for the railroad property, nor that the interest of Yoakum in the land was not fully worth the interest in the railroad, nor that appellee was in any manner damaged by the sale of the railroad.

There is not one word in the twenty-second and twenty-third paragraphs of the cross-bill that tends to indicate that appellants will attempt to defraud appellee out of the value of anything or in any wise injure or damage him. There is nothing alleged indicating any breach or intended breach of the contract, and there is no basis laid in the pleadings for the damages claimed by appellee. The evidence indicated that appellants had paid the Johnson and the Brown claims.

As hereinbefore indicated, the facts pleaded indicate that this was a divisible contract, and that appellee could only recover for such damages as might arise from the payment by him of any debt that appellants had failed and refused to pay.

The case of Batsell v. Railway, 4 Tex. Civ. App. 580, 23 S. W. 552, so strongly relied upon by appellee to sustain his position that the contract was an indivisible one, has been given a careful perusal and thorough investigation, and it is undoubtedly the law of the case made by its facts. In that case Batsell paid his money on condition that the road

was built, equipped, established, and operated; that engine houses and machine shops should be built in Sherman; and that Sherman was to be made the end of the division. These were clearly conditions, and the breach of either of them worked a forfeiture of the contract, and the court, through Judge Rainey, very properly held that the contract was an entirety. It has no application to the facts of a case in which a deed is made to land, no lien being reserved, and a separate promise is made by the grantees to do certain things. The case of McFarland v. Lyon, 4 Tex. Civ. App. 586, 23 S. W. 554, is a similar one to the Batsell Case.

The case of Hearne v. Garrett, 49 Tex. 619, is not applicable. In that case it was held that, where a man was employed to perform stipulated work or labor for a specified time and is wrongfully prevented from doing the work or laboring the stipulated time, the employé may treat the contract as abandoned. It does not fit this case.

In the case of Hochstader v. Sam, 83 Tex. 464, 18 S. W. 753, it was held that Sam had bound himself and assistant, and the failure to keep the assistant at work was a breach of the contract by him. Of course it was because the service of the two men was the whole essence of the contract, and especially that of the assistant. The case has no application to the facts of this case.

In the case of Greenwall v. Markowitz, 97 Tex. 479, 79 S. W. 1069, 65 L. R. A. 302, the plaintiff had made a renunciation of the contract before the time when the defendant was to perform, and it was held that the plaintiff could not in that manner put an end to the contract, and that the plaintiff could not recover damages in such case. It is not in point in this case.

The cases from other states, that are cited, that were accessible, are no more in point than the Texas cases. Take, for instance, the case of Kokomo Strawboard Co. v. Inman, 134 N. Y. 92, 31 N. E. 248, in which it is held that where the plaintiff contracted to furnish defendant 1,200 tons of strawboard during the year 1888, or 90 days acceptance from date of invoice, and plaintiff made deliveries and took defendant's notes for same instead of acceptances, held, that a failure to pay breached the contract, and plaintiff could treat it as terminated and sue on the notes given for the partial deliveries. There is nothing therein that militates against the proposition that the contract between appellants and appellee was a severable one, and that the delay or failure in the payment of one or more debts would not work a cancellation or forfeiture of the whole, and that the measure of damages for failure to pay a debt would be the amount paid by the debtor to the creditor. The law does not favor the destruction of a contract which reasonably can be held to be severable in its nature. Appellee had no cause of action for a failure to pay any one or more of its debts except one for damages and those confined to the amount of the unpaid debts. So. Tex. Tel. Co. v. Huntington, 104 Tex. 350, 136 S. W. 1053, 138 S. W. 381.

As said in the case of Mayer v. Swift, 73 Tex. 367, 11 S. W. 378:

"The deed * * * is an absolute and unqualified conveyance of the land upon a valuable consideration shown upon the face of the deed to be unpaid, but no lien is reserved or condition expressed upon the face of the deed. If the only issue presented * * * to the jury had been whether the deed was fraudulently obtained, and the verdict had been in favor of the plaintiff, and the judgment had been for its rescission and the restoration of the land to the plaintiff, we would find no ground in this record for setting it aside. If, on the other hand, there was no fraud in obtaining the deed sufficient to justify it being set aside, then we do not think the failure to pay the consideration or comply with its terms subsequently furnish any grounds for rescinding it."

Calling the suit one for damages when the effect is the same as a suit for a rescission, with the added penalty of compelling the grantees to pay for the property at a valuation fixed by the grantor, cannot make a loophole of escape from the law as announced in the quotation. The whole intent of the action was to destroy the contract made by the parties and in truth and in fact obtain a forfeiture of the title.

We think that, the case having been properly brought into court through the original suit of Clark & Bliss, the court had jurisdiction to render the judgment for $100 in favor of appellee.

[6] Appellee insists that he has lost money by the failure to promptly pay the Johnson and G. P. Brown debt, but how does not appear. He has not paid off and discharged either of the debts, and he fails to show how he has been damaged in connection with the debts. In fact it seems the debts have been paid by appellants. No damage has resulted to him, and he will not be permitted to destroy his contract merely because there has been some delay in the payment of some of the debts. This was a contract of indemnity, and as said by the Supreme Court of the United States in the case of Wicker v. Hoppock, 73 U. S. (6 Wall.) 94, 18 L. Ed. 752, relied on by appellee:

"In that class of cases obligee cannot recover until he has been actually damnified, and he can recover only to the extent of the injury he has sustained up to the time of the institution of the suit."

This class of contract is pronounced in Texas to be one of indemnity, and it is on that point that the difference in the Texas ruling and that of the United States Supreme Court occurs. Bank v. Wallace, 161 S. W. 957, in which writ of error was refused by the Supreme Court.

The judgment is affirmed.

## On Motions for Rehearing by Appellants and Appellee.

Appellee has attached to his motion for rehearing a copy of the pleadings in the Bat-

sell Case, and it is insisted that this court has overruled that very important case. We hold that the principles announced in the Batsell Case are correct and well established, but they have no applicability to the facts alleged in this case. It is denied that Batsell paid his subscription on condition that the railroad "was built, equipped, established, and operated, that engine houses and machine shops should be built in Sherman, and that Sherman should be made the end of the division"; but Judge Rainey, who wrote the opinion, thought so, for he says:

"A contract was made by which the railroad company bound itself to establish, equip, and operate said road, build engine houses and machine shops in the city of Sherman, and to make Sherman the end of a division of said road."

This court has not held that the Batsell contract was not entire, but we agree with the opinion that it was entire. We do hold, however, that a different character of contract is presented in this case, and that it is under all rules of construction a severable contract. The case of Tinsley v. McIlhenny, 30 Tex. Civ. App. 352, 70 S. W. 793, is not at all in point in this case, and this court thoroughly agrees with the opinion in that case. The same may be said of Browne v. French, 3 Tex. Civ. App. 445, 22 S. W. 581. In each of the last two cases mentioned, the parties had assumed the payment of a single debt, and had failed to pay it, and judgment had been rendered against the makers of the debts, and of course the parties who had assumed the debts were liable. There is no merit in appellee's motion, and it is overruled.

[7] We sustain the contention of appellants that, while appellee alleged the circumstances under which he paid out $100 for attorneys' fees, yet he did not pray for a judgment for that sum, but sought to recover nothing but the value of the properties conveyed by him to appellants. The pleadings as to the $100 are as follows:

"Upon threatening to bring suit against him, the said Closner conveyed back to this defendant this defendant's half interest in said land; but this defendant had already incurred an expense of, to wit, the sum of $100, by reason of the said failure of the said defendants to pay said judgment, and by reason of the sale of his said half interest in said land, and by reason of the abstracting of said judgment in the way of a reasonable fee to such attorney and his reasonable expenses."

The matter as to the attorney's fee was pleaded in order to show a breach of the contract and not as a basis for a recovery of that amount. This clearly appears from succeeding allegations and the prayer.

Section 25 of the cross-action is:

"This defendant avers that the reasonable cash market value of his interests in all of said properties that were conveyed by him to the said Closner and Sprague in consideration of their agreements and promises, as hereinbefore set forth, was the sum of $646,276 at the time he so conveyed the same."

The prayer is:

"Premises considered, this defendant prays that he have judgment over against the said Closner and Sprague for the said sum of $646,-276, less the amount of any debts and reasonable expenses incurred in paying said debts that they may have paid and incurred under the terms of said contract, for a foreclosure of a lien on the said interests in said properties conveyed by this defendant to said Closner and Sprague, and this defendant also prays for general relief, together with his costs."

Appellee sought to recover the value of the land, and did not seek a recovery of any debts that he may have paid. The $100 attorney's fee was not included in the prayer, because he distinctly pleaded that it was the value of the property that he sought to recover, and that alone. To render judgment for the $100 was to render for more than appellee sought to recover. Nowhere in the pleading is there any allegation that appellants were obligated or bound to repay the $100 attorney's fee, nor is that debt among those assumed by appellants in their contract with appellee. They were bound for the then existing debts and could not be held to pay the $100 by the terms of the contract. The allegation as to the fee was not made to recover the fee, but was pleaded merely as inducement to a recovery of the value of the property sold by appellee to appellants. He did not seek to recover the $100 awarded him by the court, and did not plead sufficient to justify a judgment for that amount.

[8] If, by a breach of the contract, appellee was compelled to pay $100 attorney's fee, such fee would not be an element of the damages, even though it had been properly pleaded. The payment of an attorney's fee caused by the breach of a contract cannot be made to enter into and become a part of the damages for such breach. It has often been held in Texas that counsel fees incurred in prosecuting a suit for or defending against a wrong are not ordinarily recoverable as actual damages. Sherrick v. Wyland, 14 Tex. Civ. App. 299, 37 S. W. 345; Landa v. Obert, 45 Tex. 539. The matters alleged did not form a basis for the recovery of attorneys' fees.

[9] No exemplary damages were sought, in fact the case is one for rescission; the reason given for suing for the total value of the property, instead of the property itself, being that it had been mortgaged, and attorneys' fees could not have been recovered, even though the suit had been one purely for damages. In only a few states are attorneys' fees allowed as exemplary damages, and that only in cases of tort or trespass, and the Supreme Court of the United States has held that, even in that class of cases, attorneys' fees are not an element of damages. The court held:

"It must be evident, also, that, as it depends upon the degree of malice, wantonness, oppression, or outrage of the defendant's conduct, the punishment * * * cannot be measured by the expenses of the plaintiff in prosecuting his suit. It is true that damages, assessed by way of example, may thus indirectly compensate the plaintiff for money expended in counsel fees; but the amount of these fees cannot be taken as the measure of punishment or a necessary element in its infliction. * * * Where such a rule of law exists, allowing the jury to find costs de incremento in the shape of counsel fees, * * * they should be permitted to do the same for the defendant, where he succeeds in his defense, otherwise the parties are not suffered to contend in an equal field. Besides, in actions of debt, covenant, and assumpsit, where the plaintiff always recovers his actual damages, he can recover but legal costs as compensation for his expenditure in the suit, and as punishment * * * for his unjust detention of the debt; and it is a moral offense, of no higher order, to refuse to pay the price of a patent or the damages for a trespass, which is not willful or malicious, than to refuse the payment of a just debt. There is no reason, therefore, why the law should give the plaintiff such an advantage over the defendant in one case and refuse it in the other." Day v. Woodworth, 54 U. S. (13 How.) 363, 14 L. Ed. 181.

Closner bought the land owned by him and appellee at the sale under an order of sale in the case of Johnson v. Chapin et al., and the deed was made to Closner. When those facts were ascertained by appellee, he, without demanding an explanation from Closner or a request to convey his part of the land to appellee, employed an attorney, who without suit obtained a reconveyance of the land to appellee. The testimony fails to show that Closner ever refused to make such reconveyance or that there was any necessity for the employment of an attorney. But admitting that a lawyer was necessary to obtain a reconveyance, we hold that, if suit had been instituted, appellee could not have recovered anything but the land and his costs. If he could have recovered attorneys' fees in such a suit, such fees could be recovered in any action of trespass to try title. Such recovery would not be permitted in such an action, and, if he could not have recovered the fee in the suit for the land, he cannot recover it in this suit.

We think the court should have dismissed the entire suit when the exceptions were sustained to other items in the petition, because no cause of action is stated as to the fee of $100, for the reason that in the first place appellee did not sue for the $100, and in the second place, if sued for, the attorney's fee could not be recovered as a part of the damages. Appellants' motion for a rehearing is granted. That part of the judgment sustaining the exceptions is affirmed, but that part rendered against appellants for $100 is reversed, and judgment here rendered that the cause of action be dismissed and that appellants recover all costs in this behalf expended.